Slip Op. 19-157

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE DIAMOND SAWBLADES MANUFACTURERS' COALITION,**<br><br>  Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>  Defendant,<br><br>and<br><br>**BOSUN TOOLS CO., LTD.,**<br><br>  Defendant-Intervenor. | Before: Claire R. Kelly, Judge<br><br>Court No. 17-00167 |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand redetermination in the sixth administrative review of the antidumping duty order covering diamond sawblades and parts thereof from the People's Republic of China.]

Dated: December 16, 2019

Daniel B. Pickard, Wiley Rein, LLP, of Washington, DC, argued for plaintiff Diamond Sawblades Manufacturers' Coalition. With him on the brief were Maureen E. Thorson and Stephanie M. Bell.

John J. Todor, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel was Paul Keith, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, DC, argued for defendant-intervenor Bosun Tools Co., Ltd. With her on the brief were Gregory S. Menegaz and J. Kevin Horgan.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") remand redetermination filed pursuant to the court's order in Diamond Sawblades Mfrs. Coalition v. United States, 42 CIT __, Slip Op. 18-146 (Oct. 23, 2018) ("DSBs I"). See Remand Redetermination Pursuant to Ct. Remand Order in [DSBs I], Apr. 17, 2019, ECF No. 43-1 ("Remand Results").

In DSBs I, the court remanded for further explanation and consideration Commerce's conclusion that Bosun Tools. Co., Ltd. ("Bosun" or "Defendant-Intervenor") had acted to the best of its ability in responding to Commerce's requests for information in the sixth administrative review of the antidumping duty ("ADD") order covering diamond sawblades and parts thereof ("DSBs") from the People's Republic of China ("PRC").[1] DSBs I, Slip Op. 18-146 at 18, 25–26; see also [DSBs] and Parts Thereof From the [PRC], 82 Fed. Reg. 26,912 (Dep't of Commerce June 12, 2017) (final results of ADD admin. review; 2014–2015) ("Final Results"), and accompanying Issues and Decision Memo. for the Admin. Rev. of [ADD] Order on [DSBs] from the [PRC], A-570-900, June 6, 2017, ECF No. 18-4 ("Final Decision Memo.").

Bosun challenges Commerce's remand redetermination as arbitrary and capricious and as unsupported by substantial evidence, and requests the court to remand the case. See Def.-Intervenor [Bosun] Cmts. Remand Redetermination at 3–24, June 3, 2019, ECF No. 47 ("Bosun's Br."). Defendant and Plaintiff Diamond Sawblades Manufacturers' Coalition ("DSMC") request the court to uphold the Remand Results in its entirety. See Def.'s Resp. [Bosun Br.] at 1, 8–18, July 25, 2019, ECF No. 51 ("Def.'s

---

[1] The court also remanded for further consideration Commerce's selection of surrogate values for copper powder and copper iron slab. See DSBs I, Slip Op. 18-146 at 25–26.

Resp. Br."); see also Pls.' Resp. [Bosun Br.] at 3–18, July 25, 2019, ECF No. 52 ("Pls.' Resp. Br."). For the following reasons, the court sustains Commerce's Remand Results.

## BACKGROUND

The court assumes familiarity with the facts as discussed in the prior opinion, see DSBs I, Slip. Op. 18-146 at 2–7, 18–21, and here recounts those facts relevant to the court's review of the Remand Results. In this sixth administrative review ("POR") of the ADD order on DSBs,[2] Commerce selected Bosun as a mandatory respondent following the withdrawal of certain petitioners' requests for review.[3] See Antidumping and Countervailing Duty Administrative Reviews, 81 Fed. Reg. 736 (Dep't Commerce Jan. 7, 2016) (initiation); Selection of Respondents for Individual Examination at 5, PD 29, bar code 3438973-01 (Feb. 5, 2016) ("Respondent Selection Memo."); Selection of an Additional Respondent for Individual Examination at 1–2, PD 166, bar code 3463908-01 (Apr. 27, 2016).[4]

Throughout the POR, Bosun sold DSBs manufactured in Thailand and the PRC through its U.S. affiliates Bosun Tools, Inc. ("Bosun USA") and Pioneer Tools, Inc. ("Pioneer"). See Final Decision Memo. at 21. Bosun's U.S. affiliates did not record the country of origin of DSBs when selling to U.S. customers. Id. at 26–27. As a result,

---

[2] The sixth administrative review covers the period November 1, 2014 to October 31, 2015.

[3] Initially, Commerce selected Husqvarna and Jiangsu Fengtai as mandatory respondents, which had "the largest volume of imports of subject merchandise during the POR[.]" Respondent Selection Memo. at 3.

[4] On May 1, 2019, Defendant filed indices to the public and confidential administrative records underlying Commerce's remand redetermination on the docket at ECF No. 46-1–2. Citations to the administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices.

Court No. 17-00167 Page 4

Bosun reconstructed the country of origin for its affiliates' sales through a three-step procedure ("sales identification methodology"), including the application of a first-in, first-out ("FIFO") methodology.[5]  See id. at 27–28.  Commerce verified Bosun's sales identification methodology and did not determine it "to be inaccurate." Id. at 27. Commerce also did not find that "Bosun was inattentive, careless, or inadequate in keeping the country of origin record[.]" Id. at 28. Although Commerce found that Bosun could not replicate the reported result of the FIFO methodology to one pre-selected sale at verification, Commerce considered this deficiency a "minor error" that was "limited to this sale[] . . . only" and accepted Bosun's sales identification procedure. Id. Commerce also found Bosun complied with the "best of its ability standard" because "Bosun was able to segregate the sales of subject merchandise using its sales identification methodology[.]" Id. at 27–28. Therefore, Commerce declined to apply facts otherwise available with an adverse inference, as urged by petitioner DSMC.[6]  Id.  Commerce

---

[5] First, Bosun identified the models of DSBs that Bosun USA and Pioneer purchased through product codes assigned to each affiliate; second, Bosun identified the country of origin by matching the product codes to unit purchase prices; and, third, Bosun applied a FIFO methodology to assign country or origin to each sale. See Bosun Questionnaire Response at C-2–3, PD 207–10, bar code 3483626-01 (July 1, 2016); Supp. Questionnaire Resp. at 2–3, PD 258–72, bar code 3504652-01 (Sept. 7, 2016); Bosun Second Supp. Resp. at 1–3, PD 332–33, bar code 3521778-01 (Nov. 10, 2016).

[6] Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and, second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available." See 19 U.S.C. § 1677e(a)–(b). The phrase "total adverse inferences" or "total AFA" encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability Commerce must use an adverse inference in selecting among the facts otherwise available.

Court No. 17-00167 Page 5

calculated a weighted-average dumping margin of 6.19% for Bosun.  See Final Results, 82 Fed. Reg. at 26,912.

In DSBs I, the court faulted Commerce for failing to explain how Bosun acted to the "best of its ability" when Bosun had failed to record the country of origin of its sales. See DSBs I, Slip Op. 18-146 at 14.  As an interested party, Bosun is required to anticipate the information needed for administrative proceedings, yet it did not record country of origin data.  Id.; see also Peer Bearing Corp. v. United States, 766 F.3d 1396, 1400 (Fed. Cir. 2014); Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). The court therefore remanded Commerce's Final Results for further clarification or reconsideration.[7]  See DSBs I, Slip Op. 18-146 at 18, 26.

On remand, Commerce found that Bosun failed to act to the best of its ability, because Bosun could have maintained country of origin information for its sales of subject merchandise but did not, and, therefore, Bosun failed to provide information in the manner and form requested and impeded the proceeding.  See Remand Results at 1–2, 9–14, 21–26.  Moreover, Commerce found that the information that Bosun did submit could not be verified.  See id. at 9, 24.  Commerce therefore determined Bosun's ADD rate based entirely on facts otherwise available and applied an adverse inference.  See id. at 13, 25.[8]

---

[7] DSMC also challenged Commerce's the selection of surrogate values for copper powder and copper iron slab.  See DSBs I, Slip Op. 18-146 at 21–26.  The court also remanded this issue. See id. at 25–26.

[8] Given that Commerce determined Bosun's dumping margin entirely on facts otherwise available with an adverse inference, Commerce considered the surrogate value issue to be moot.  See Remand Results at 1–2.  No party challenges this latter determination.

Commerce determined Bosun's ADD rate to be 82.05 percent, the PRC-wide rate.  See Remand Results at 13.[9]

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012)[10] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an investigation of an antidumping duty order.  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States,  32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

Bosun argues that no "necessary information" regarding Bosun's U.S. sales was missing from the record that requires Commerce to rely on facts otherwise available, because Bosun identified country of origin through its sales identification methodology.  See Bosun's Br. at 5–10.  Bosun avers that it acted to the "best of its ability" and contends

---

[9] The rate for non-selected respondents eligible for a separate rate was consequently also increased to 82.05 percent.  See Remand Results at 13–14.

[10] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. § 1677e, however, are to the unofficial U.S. Code Annotated 2018 edition, which reflects the amendments made to 19 U.S.C. § 1677e by the Trade Preferences Extension Act of 2015.  See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, 129 Stat. 362 (2015).

that Commerce's determination to apply AFA is arbitrary and capricious and unsupported by substantial evidence. See id. at 17–24. Defendant and DSMC respond that Bosun's failure to maintain direct country of origin records does not satisfy the "best of its ability standard" and warrants the application of AFA to Bosun. See Def.'s Resp. Br. at 1–2, 8–18; see also Pls.' Resp. Br. at 3–18. For the reasons that follow, Commerce's decision to apply AFA to Bosun is not arbitrary or capricious, is supported by substantial evidence, and complies with the court's remand order.

To calculate a dumping margin for merchandise from a non-market economy ("NME") such as the PRC, Commerce compares a product's U.S. price with a normal value, calculated with information placed on the record by the parties. 19 U.S.C. § 1677b(b)–(c). Commerce is required to rely on "facts otherwise available" where, inter alia, "necessary information is not available on the record" or where a party fails to provide information "in the form and manner requested[,]" "significantly impedes a proceeding[,]" or provides information that "cannot be verified[.]" See 19 U.S.C. § 1677e(a)(1)–(2). However, should a party submit information that does not fully comply with all requirements, Commerce must consider that information, if, inter alia, the party demonstrates that it has acted to the "best of its ability" and that information "can be verified[.]" See 19 U.S.C. § 1677m(e).[11] Should a party fail to meet the "best of its ability"

---

[11] In addition, Section 1677m(e) requires that the information is "submitted by the deadline established for its submission," "is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination," and "can be used without undue difficulties[.]" 19 U.S.C. § 1677m(e).

standard, Commerce may use inferences adverse to that party to select from among the facts otherwise available. Id. § 1677e(b); see also Nippon Steel Corp., 337 F.3d at 1382.

Commerce reasonably applied facts otherwise available because it found information necessary to its determination was missing from the record. Bosun did not provide Commerce the requested direct country of origin information, which "is unquestionably necessary to distinguishing U.S. sales of subject merchandise and to determining accurate duty margins" and "among the most basic data necessary for [that] calculation[.]" DSBs I, Slip Op. 18-146 at 9, 11; Final Decision Memo. at 26, 28; see also Remand Results at 9–10. Instead, Bosun furnished indirect country of origin information, constructed through its sales identification methodology, and submitted this substitute information for Commerce to consider, pursuant to section 1677m(e). See Final Decision Memo. at 26–28; Remand Results at 2–3, 10. Commerce, however, discovered reporting errors at verification, namely in spot-checking the accuracy of the FIFO methodology to sample sales traces.[12] See Final Decision Memo. at 28; Remand Results at 9, 24; see also Verification of the U.S. Sales Response of [Bosun] at 10–11, PD 383, bar code 3573591-01 (May 17, 2017) ("Bosun Verification Report"). Given, that by statute, verification is a requirement to submit information under section 1677m(e) and that Commerce identified errors at verification, Commerce reasonably found it "inappropriate

---

[12] Although Bosun concedes that it misreported CONNUMs in two of the sixteen sales traces at verification, Bosun argues that Commerce erred in declining to rely on Bosun's indirect country of origin information, because the mistakes were "isolated in nature, small in quantity, and had no effect on the margin calculation." See Bosun's Br. at 12–17. Bosun faults Commerce for claiming, in the Remand Results, that "the errors with CONNUM reporting are pervasive." Id. at 17. Commerce, however, merely referred to the reporting error to "further support[]" why Bosun's information could not be verified and did not comment on whether the CONNUM errors were "pervasive." See Remand Results at 12 n.37.

to rely on Bosun's sales identification methodology[.]"  See Remand Results at 12; see also 19 U.S.C. § 1677m(e).[13]  Therefore, without any "reliable information on the country of origin" to calculate Bosun's margin, Commerce reasonably selected among facts otherwise available to fill this informational gap.[14]  Remand Results at 12.

Further, Commerce's application of an adverse inference in selecting among facts otherwise available is reasonable because Bosun did not act to the "best of its ability" when it failed to maintain direct country of origin records.[15]  The "best of its ability" standard compels respondents to take reasonable steps to keep and maintain complete records that they would reasonably be called upon to produce in an antidumping

---

[13] Although Commerce initially accepted Bosun's sales identification methodology and the indirect identification of country of origin, pursuant to U.S.C. § 1677m(e), see Final Decision Memo. at 26–28, the court in DSBs I remanded, for further clarification or reconsideration, Commerce's finding that Bosun's "nonstandard data" complied with section 1677m(e) despite verification errors. See DSBs I, Slip Op. 18-146 at 15–18.  Thereafter, Commerce, on remand, reconsidered Bosun's sales identification methodology.  See Remand Results at 12.

[14] Bosun contends that verification revealed discrepancies in only 2.5% of Bosun's sales, and, therefore, Commerce cannot lawfully apply AFA or facts available to the remaining 97.5% of sales.  See Bosun's Br. at 7–8.  In making this argument, Bosun implies that the error must necessarily be isolated; however, the record does not establish the error was isolated.  Commerce, here, spot-checked the reliability of Bosun's sales identification methodology using a sample of sales.  Therefore, its finding of error in that sample, however allegedly small, says nothing of whether the error permeates the remaining sales.  Therefore, Commerce, as it reasonably concluded, "[could not] be confident" in Bosun's indirect country of origin information.  See Remand Results at 12 & n.37 (citing DSBs I, Slip Op. 18-146 at 17).

[15] Bosun further argues that Commerce's determination is arbitrary and capricious because it relies on the same underlying facts as in the original review but reaches the opposite conclusion.  See Bosun's Br. at 4–5.  According to Bosun, Commerce also "has made no real attempt to explain how its initial detailed findings now compel the opposite conclusion."  Id. at 4.  However, Commerce was directed to reconsider those facts in light of this court's previous opinion.  See DSBs I, Slip Op. 18-146 at 9, 26 (remanding for "clarification, or reconsideration if Commerce deems that appropriate").  Moreover, Commerce is not compelled to reach the same conclusions on remand.  See Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the [same] evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

investigation. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382–84 (Fed. Cir. 2003) (holding that a producer failed to meet the "best of its ability" standard when it failed to respond to Commerce's request for conversion data factors). Bosun had the opportunity to record country of origin information. It marked merchandise with country of origin at the time it was shipped to its inventory warehouse, yet Bosun did not subsequently "identify or record the county of origin for the products being prepared for sale to unaffiliated U.S. customers." See Bosun Verification Report at 4.[16] Although the "best of its ability" standard does not require perfection, Commerce's finding that Bosun should have kept direct country of origin records is reasonable here. See Nippon Steel, 337 F.3d at 1382.[17] Compliance with the best of its ability standard is determined by whether a respondent "has put forth its maximum effort[.]" Id. Given that Bosun had the apparent ability to maintain country of origin information, Commerce reasonably determined that Bosun did not act to the best of its ability in failing to maintain country of origin records.

---

[16] Commerce "asked why Bosun did not record the country of origin[,]" and Bosun explained that it "was not necessary information which needed to be recorded[.]" Bosun Verification Report at 4. As the Federal Circuit held in Nippon Steel, "[t]he mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it make its determination." Nippon Steel, 337 F.3d at 1381.

[17] Bosun contends that "[t]he assessment of whether a respondent complied with its best ability should take into account the respondent's efforts throughout the process, and not disproportionally focus on what the respondent could have done better before the administrative review." Bosun's Br. at 22; see also id. at 19 ("The Nippon Steel Court never created an artificial construct that attentiveness to recordkeeping and efforts in the course of the review were two unrelated pass/fail tests for a respondent."). However, Nippon Steel did not holistically evaluate how well the plaintiff producer cooperated during the investigation, in assessing whether that producer complied with the "best of its ability" standard. Rather, in Nippon Steel, the Court of Appeals more narrowly scrutinized the producer's actions, preceding the investigation, such as taking reasonable steps to keep and maintain records. See Nippon Steel, 337 F.3d at 1382.

Moreover, as a mandatory respondent in previous proceedings, Bosun should have been aware of the necessity to maintain country of origin records. Remand Results at 10. Bosun cannot rely on a belief that it would not be selected for individual examination to justify its failure to maintain records. Bosun's Br. at 17–19; see Nippon Steel, 373 F.3d at 1383 ("The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of a respondent's ability, regardless of motivation or intent."). As a reasonable producer, Bosun should have taken steps to maintain direct country of origin information. See Nippon Steel, 373 F.3d at 1382–83; see, e.g., Peer Bearing Corp., 766 F.3d at 1400 ("The obligation to maintain . . . data does not cease at the conclusion of the review[.]"). It was therefore reasonable for Commerce to "expect that more forthcoming responses should have been made" by Bosun, a respondent experienced with Commerce's investigations. See Nippon Steel, 373 F.3d at 1383.

Bosun's argument that Commerce's determination treats the "AFA statute . . . as a hammer to . . . punish" Bosun, contrary to the intended purpose of that provision, is unavailing. Bosun's Br. at 20.[18] As Commerce noted, use of AFA was suitable because Bosun's failure to maintain records left Commerce with no reliable information to calculate Bosun's margin. See Remand Results at 25; see also F.Lii de Cecco di Filippo Fara S.

---

[18] Bosun also contends that the 82.05 percent ADD rate assigned to Bosun, following the Remand Results, "departs so severely from Bosun's historical rates [that it] cannot be said to be accurate." Bosun's Br. at 24. Further, Bosun argues that Commerce's remand redetermination "inappropriately aligns the margin of experience of a State-run company with a private company." Id. Both arguments fail, because the statute confers upon Commerce discretion to apply any antidumping margin from any segment of the proceeding as an adverse inference. See 19 U.S.C. § 1677e(d)(2); see also Hubbell Power Systems, Inc. v. United States, Slip Op. 19-145 at 7–8, 43 CIT __, __ (2019).

Court No. 17-00167     Page 12

Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (The objective of the AFA regime is "to provide respondents with an incentive to cooperate, not to impose punitive . . . margins.").

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce's Remand Results is sustained. Judgment will enter accordingly.

   /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: December 16, 2019
      New York, New York