Slip Op. 21-150

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE DIAMOND SAWBLADES MANUFACTURERS' COALITION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> BOSUN TOOLS CO., LTD., <br><br> Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Court No. 17-00167 |

## OPINION

[Sustaining the U.S. Department of Commerce's second Final Remand Redetermination in its sixth annual review of the antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China.]

Dated: October 27, 2021

Daniel B. Pickard, Maureen E. Thorson, and Stephanie M. Bell, Wiley Rein LLP, of Washington, DC, argued for plaintiff Diamond Sawblades Manufacturers' Coalition.

John J. Todor, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, argued for defendant United States. Of counsel was Paul K. Keith, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, deKieffer & Horgan, PLLC of Washington, DC argued for defendant-intervenor Bosun Tools Co., Ltd.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand redetermination filed pursuant to the court's order for further proceedings in accordance with Diamond Sawblades Mfrs.' Coal. v. United States, 986 F.3d 1351 (Fed. Cir. 2021); Final Remand Redetermination, Diamond Sawblades Mfrs.' Coal. v. United States, Ct. No. 17-00167, Appeal No. 20-1478, July 13, 2021, ECF No. 74-1 ("Second Final Remand Redetermination"); see Order, Mar. 25, 2021, ECF No. 71; see also Diamond Sawblades, 986 F.3d 1351. In its opinion, the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") instructed Commerce to reconsider its application of facts otherwise available with an adverse inference ("AFA")[1] to sales of which the country-of-origin information was determined using the product code or unit price. Diamond Sawblades, 986 F.3d at 1367. Defendant-intervenor Bosun Tools Co., Ltd. ("Bosun") challenges Commerce's remand redetermination as not supported by substantial evidence and contrary to law and requests that the court remand the case. See Def.-Intervenor [Bosun]'s Comments on Second Remand Redetermination, Aug. 12, 2021, ECF No. 78 ("Bosun's Second Remand Comments"). Defendant United States and Plaintiff Diamond Sawblades

---

[1] Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination. However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available." See Tariff Act of 1930, as amended, § 776, 19 U.S.C. § 1677e(a)–(b) (2018).

Manufacturers' Coalition ("DSMC") request that the court uphold the Second Final Remand Redetermination in its entirety. Pl. [DSMC]'s Revised Resp. to [Bosun's Second Remand Comments] (Confidential Version), Sept. 13, 2021, ECF No. 81 ("DSMC Resp."); Def.'s Resp. to Comments on Remand Results, Sept. 13, 2021, ECF No. 79 ("Def.'s Resp."). For the following reasons, the court sustains Commerce's Second Final Remand Redetermination.

## BACKGROUND

In 2006 Commerce issued an antidumping duty order covering "diamond sawblades and parts thereof" ("sawblades") imported from the People's Republic of China ("China"). Diamond Sawblades and Parts Thereof from [China], 71 Fed. Reg. 29,303 (Dep't Com. May 22, 2006) (final deter. of sales at less than fair value and final partial affirmative deter. of critical circumstances). On April 27, 2016, Commerce selected Bosun, a Chinese exporter and producer of sawblades, for individual investigation during the sixth annual administrative review. Selection of an Additional Respondent for Individual Examination in the 2014-2015 Antidumping Duty Admin. Rev. at 1–2, PD 166, CD 117, Doc. No. 3463908-01 (Apr. 27, 2016). Sawblades produced by Bosun are sent to Bosun Tools, Inc., one of two of its U.S. importer-affiliates. Letter from deKieffer & Horgan, PLLC to Sec'y Com., re: Diamond Sawblades from [China] – Sections C & D Questionnaire Resp. at C-1, P.R. 207-210, C.R. 132-143, Doc. No. 3483626-01 (July 1, 2016) ("2016 Questionnaire Resp."); Second Final Remand Redetermination at 2. Bosun's second importer-

Court No. 17-00167 Page 4

affiliate, Pioneer Tools Inc. imports sawblades from Thailand not covered by the antidumping order. 2016 Questionnaire Resp. at C-1–2; Second Final Remand Redetermination at 2. Bosun's importer-affiliates sold sawblades to one another. 2016 Questionnaire Resp. at C-1–2.

To calculate Bosun's antidumping margin, Commerce needed to identify the origin of the sawblades sold by the importer-affiliates, information that neither Bosun nor its importer-affiliates recorded. Second Final Remand Redetermination at 2; see 2016 Questionnaire Resp. at C-1–3. Bosun attempted to collect country-of-origin information using three methods: (1) identifying the product code, which in some cases was specific to the country of origin; (2) identifying the unit price; and (3) making an inference that importer-affiliates generally sold product using a first-in, first-out ("FIFO") method. 2016 Questionnaire Resp. at C-2–3; Second Final Remand Redetermination at 2. Commerce determined that the information provided by Bosun was reliable despite a discrepancy[2] uncovered during the verification of the FIFO methodology and assigned Bosun a weighted average dumping margin of 6.19 percent. Verification of the U.S. Sales Resp. of [Bosun] at 10–11, PD 383, CD 365, Doc. No. 3573591-01 (May 17, 2017) ("Verification Report"); Diamond Sawblades and Parts Thereof from [China], 82 Fed. Reg. 26,912, 26,912 (Dep't Com. June 6, 2017) (final results of antidumping duty admin. rev.; 2014-2015) ("Final Results") and

---

[2] Bosun's FIFO methodology reported smaller quantities of subject merchandise than the original quantities invoiced for two of the on-site selected sales traces. Verification Report at 10.

accompanying Issues and Decision Memo. at 25–27, Doc. No. 3578943-01 (June 6, 2017) ("Final Decision Memo."); see Second Final Remand Redetermination at 2.

The domestic-industry DSMC challenged inter alia, Commerce's decision not to use AFA before this court.[3] [DSMC's] Memo. in Supp. of Rule 56.2 Mot. for J. on Agency R., Dec. 5, 2017, ECF No. 28; see Diamond Sawblades Mfrs.' Coal. v. United States, 42 CIT __ , Slip op. 18-146 (Oct. 23, 2018) ("Slip Op. 18-146"). This court concluded Commerce's determination was at odds with the Court of Appeals' precedent regarding the "best of its ability" standard and remanded for clarification or reconsideration. Slip Op. 18-146 at 7–14. Commerce issued the Final Remand Redetermination on April 17, 2019, using AFA for all of Bosun's sales of sawblades during the review period due to the unreliability of the FIFO methodology. Final Remand Redetermination [Slip Op. 18-146], Apr. 17, 2019, ECF No. 43-1 ("First Remand Redetermination"). Bosun challenged the redetermination before this court, which affirmed Commerce's determination. Diamond Sawblades Mfrs.' Coal. v. United States, 43 CIT __, __, 415 F. Supp.3d 1365 (2019). Bosun appealed to the Court of Appeals. Diamond Sawblades, 986 F.3d at 1351.

On appeal, Bosun challenged Commerce's decision to disregard all the origin data Bosun provided and the application of facts otherwise available, as unsupported

---

[3] This court remanded the case for clarification or reconsideration of Commerce's decision not to use AFA, Slip Op. 18-146 at 18, the use of the Thai surrogate data, id. at 24–25, and its determination of the dumping margin for the separate rate. Id. at 26.

by substantial evidence.[4] Id. at 1362. The Court of Appeals determined that it was unclear whether country-of-origin information obtained for sales using the product code or unit price was unreliable, and therefore, the decision to disregard all of the country-of-origin information was unsupported by substantial evidence. Id. at 1366. The Court of Appeals remanded to determine whether substantial evidence existed to support a finding that the country-of-origin information determined using the product code or unit price was unreliable. Id. at 1367. If Commerce determined that there was no basis for the application of facts otherwise available to sales other than the sales where the country of origin was determined using the FIFO methodology ("FIFO Sales"), the Court of Appeals instructed Commerce to redetermine how adverse inferences applied to the matter. Id. On March 25, 2021, this court remanded the case to Commerce for proceedings consistent with the Court of Appeals' opinion in Diamond Sawblades. Order, Mar. 25, 2021, ECF No.71.

On July 13, 2021, Commerce filed its Second Final Remand Redetermination. Second Final Remand Redetermination. On August 12, 2021, Bosun filed its comments on the Second Final Remand Redetermination. Bosun's Second Remand Comments. DSMC filed its comments on September 14, 2021. DSMC Resp.

---

[4] Bosun also challenged this court's initial decision to remand to Commerce for abuse of discretion. Diamond Sawblades, 986 F.3d at 1361. The Court of Appeals reviewed this court's initial remand decision and found no abuse of discretion or material legal error. Id.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)[5] and 28 U.S.C. § 1581(c) (2018), which grant the court authority to review actions contesting the final determination in an administrative review of an antidumping duty order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274 (2008)).

## DISCUSSION

Commerce reviewed its application of AFA to the country-of-origin information supplied by Bosun. Second Final Remand Redetermination at 4–5. Commerce determined that there were no reliability issues with the country-of-origin information derived from methods using the product code or unit price and did not select from the facts otherwise available for sales using those methodologies. Id. at 4. Commerce continued to find the FIFO methodology unreliable and determined that resorting to AFA remained warranted for the FIFO Sales. Id. at 4–5. Bosun

---

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

Court No. 17-00167                                                                                                    Page 8

challenges the application of adverse inferences to the FIFO Sales arguing that Commerce should apply neutral facts instead. Bosun's Second Remand Comments at 8–12. In the alternative, Bosun argues that if AFA is applied, the scope of its application should be limited to the missing country-of-origin information for the FIFO Sales. Id. at 12–15. Bosun also challenges the inclusion of intracompany sales in Commerce's calculations. Id. at 5–8. Finally, the court reviews Commerce's decision to use the Thai surrogate value for valuing copper powder and copper iron clab for compliance with this court's previous remand order. Second Final Remand Redetermination at 7–11; Slip Op. 18-146 at 24–26.

I.   **The Application of Facts Available with Adverse Inferences**

Commerce continued to apply AFA to the FIFO sales in the Second Final Remand Redetermination. Second Final Remand Redetermination at 17–18. Bosun challenges Commerce's continued use of adverse inferences to the FIFO Sales, the application of adverse inferences to the sale prices of the FIFO Sales, and the inclusion of what it claims are intracompany sales in the FIFO Sales to which the adverse inferences apply. Bosun's Second Remand Comments at 5–15. For the following reasons, the court sustains Commerce's use of adverse inferences and the inclusion of the alleged intracompany sales.

   A. Adverse Inferences

Bosun argues that Commerce should apply neutral facts available to the FIFO Sales because Bosun cooperated to the best of its ability. Bosun's Second Remand

Court No. 17-00167 Page 9

Comments at 8–12. Defendant and DSMC respond that Commerce correctly concluded that Bosun failed to cooperate to the best of its ability by failing to maintain full and complete country-of-origin records. Def.'s Resp. at 15; DSMC Resp. at 9–12.

If necessary information is not available on the record, Commerce shall use facts otherwise available and may use an adverse inference if it determines that the respondent failed to cooperate to the best of its ability.[6] 19 U.S.C. § 1677e. If an interested party submits information that does not fully comply with all requirements, Commerce must consider whether the interested party cooperated to the best of its ability. See id. § 1677m(e)(4). An interested party cooperates to the best of its ability when it does "the maximum it is able to do." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Decisions by Commerce must be supported by substantial evidence. 19 U.S.C.S. § 1516a(b)(1)(B)(i). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

Upon review, Commerce determined that it would no longer use facts otherwise available for country-of-origin information obtained using the product code or unit price methodologies. Second Final Remand Redetermination at 4. However, Commerce affirmed the use of facts otherwise available regarding the FIFO Sales

---

[6] Adverse inferences may be "derived from the petition, a final determination in the investigation, . . . any previous review . . . or determination, . . . or any other information placed in the record." 19 U.S.C. § 1677e(b)(2).

Court No. 17-00167                                                                                         Page 10

because it found that Bosun "failed to maintain full and complete records regarding country of origin, despite its apparent ability to do so . . . and awareness of the need for distinguishing the country of origin of its merchandise for export." Id. at 5. Commerce maintained that the country-of-origin information gathered using the FIFO methodology was unreliable and that Bosun failed to cooperate to the best of its ability. Id. at 4–6; see also First Remand Redetermination at 10; Diamond Sawblades, 986 F.3d at 1360. Thus, Commerce applied an adverse inference in connection with the FIFO Sales. Second Final Remand Redetermination at 5–6.

        Commerce's determination is supported by substantial evidence. The Court of Appeals left undisturbed this court's decision sustaining Commerce's prior determination regarding Bosun's FIFO Sales. See Diamond Sawblades, 986 F.3d at 1364, 1367. In that decision, and as Commerce continues to find here, although the best of its ability standard does not require perfection, the standard compels respondents to take reasonable steps to keep and maintain complete records that they would reasonably be required to produce in an antidumping investigation. Id. at 1366–1367; Second Final Remand Redetermination at 5, 17–18; see Nippon Steel Corp., 337 F.3d at 1382–1384. It is reasonable for Commerce to expect that an exporter would maintain country of origin records. Slip Op. 18-146 at 11; see Second Final Remand Redetermination at 18. Since Bosun failed to maintain such records, the maximum it could do, Bosun attempted to fill the informational gap, using inter alia, the FIFO methodology. Second Final Remand Redetermination at 2. However,

during verification of the FIFO Sales Commerce identified issues related to the reliability of the information reported. Verification Report at 10–11. As a result, Commerce could not verify that the country-of-origin information was correct for the FIFO Sales and the informational gap persisted. See Second Final Remand Redetermination at 5. Seeking to fill that gap, Commerce reasonably used AFA because the gap is a direct result of Bosun's failure to maintain adequate records and no other information existed on the record to fill the gap.[7]

It is reasonably discernable that Commerce found Bosun's arguments that Commerce overlooked that Bosun relocated its main manufacturing operations for exports to Thailand, was no longer a top tier Chinese exporter of subject goods, and did not have reason to contemplate sales from multiple origins during prior reviews unpersuasive. See Second Final Remand Redetermination at 17–18; see also Bosun's Second Remand Comments at 10. Commerce continued to find that Bosun should have been familiar with Commerce's review proceedings and aware that it would need

---

[7] Bosun argues that it did not maintain country of origin records for the sawblades because its unaffiliated U.S. customers do not care about the origin of the sawblades. Bosun's Second Remand Comments at 9–10. It is reasonably discernable that Commerce determined Bosun's unaffiliated U.S. customers lack of concern regarding origin is irrelevant. Commerce explained that the Court of Appeals upheld its use of AFA for the FIFO Sales. Second Final Remand Redetermination at 5–6. Commerce continued by relying on precedent from the Court of Appeals explaining that exporters are required to take reasonable steps to maintain information that is likely to be asked for if reviewed. Id. at 18. An exporter has not complied with the best of its ability standard if the information missing is due to inadequate recordkeeping. Id. On remand, Commerce continued to find that Bosun failed to cooperate to the best of its ability because it failed to maintain country of origin records. Id. at 5, 17–18.

Court No. 17-00167 Page 12

to distinguish country-of-origin information because Bosun was a mandatory respondent in the original investigation and two reviews.[8]  Second Final Remand Redetermination at 5; see also First Remand Redetermination at 4, 21–22; Slip Op. 18-146 at 9.  Commerce's determination is reasonable.

### B. The Scope of the Adverse Inferences

In addition to the application of the AFA rate to the FIFO Sales listed in the U.S. sales database, Commerce also applied a per unit AFA rate to all of the FIFO Sales not listed in the U.S. sales database.[9]  Second Final Remand Redetermination at 6.  Bosun argues that Commerce unlawfully applied an adverse inference when it disregarded the prices of the FIFO Sales reported in the U.S. sales database and applied an AFA rate of 82.05 percent to all the FIFO Sales of Chinese origin.[10]

---

[8] Bosun was not initially called as a mandatory respondent, instead it requested review.  See Letter from deKieffer & Horgan to Sec'y Com., re: Diamond Sawblades from [China] – Request for Admin. Rev., 2014 2015 Doc. No. 3420991-01 (Nov. 30, 2015).

[9] Bosun's FIFO methodology divided sawblades into Chinese or Thai sawblades.  See Second Final Remand Redetermination at 2.  Sawblades that were labeled Thai were excluded from the U.S. sales database.  See id. at 6.  Given the reliability issues with the FIFO method, Commerce reasonably considered all the FIFO Sales Chinese and therefore subject merchandise.  Id. at 6–7.

[10] A dumping margin calculation compares the price at which the subject merchandise is sold in the United States with the subject merchandise's normal value.  See 19 U.S.C. § 1675 (a)(2).  For a nonmarket economy ("NME"), like China, Commerce begins its review with the rebuttable presumption that all companies within that country are subject to government control and should be assessed a single antidumping duty rate.  See Sigma Corp. v. United States, 117 F.3d 1401, 1405-06 (Fed. Cir. 1997) (approving Commerce's application of a presumption of government

(footnote continued)

Court No. 17-00167                                                                                          Page 13

Bosun's Second Remand Comments at 12–15.  Defendant and DSMC argue that Commerce correctly applied the AFA rate to all the FIFO Sales because the lack of reliable country-of-origin information obscures both the country of origin and the price of the sales.  Def.'s Resp. at 20–22; DSMC Resp. at 12–15.  For the reasons that follow, Commerce's decision to apply the AFA rate to all the FIFO Sales is reasonable.

On remand, Commerce issued a supplemental questionnaire requesting that Bosun identify which of the sales within the U.S. sales database were determined to be of Chinese origin using the FIFO method and Bosun responded.  Second Final Remand Redetermination at 6;  Diamond Sawblades from [China] Supplemental Questionnaire for Remand, Doc. No. 4110206-01 (Apr. 12, 2021); Letter from deKieffer & Horgan, PLLC to Sec'y Com., re: Diamond Sawblades from [China] – Remand Supplemental Questionnaire, CD 2nd REM 2, PD 2nd REM 2-4, (Apr. 19, 2021) ("Second Supplemental Questionnaire Resp.").  Using the information in the supplemental questionnaire response and the sequence numbers in the U.S. sales database, Commerce identified all the FIFO Sales of Chinese origin in the U.S. sales

---

control). However, if a company can establish de jure and de facto independence from the government, Commerce assigns it a separate rate. Sparklers from [China], 56 Fed. Reg. 20,588, 20,589, (Dep't Com. 1991) (final deter.); see Sigma Corp, 117 F.3d at 1405–1407.  Here, Commerce has determined that the China-wide rate is 82.05 percent, which it applied in place of the FIFO Sales data provided by Bosun. Second Final Remand Redetermination at 22; see Diamond Sawblades and Parts Thereof from [China]: Notice of Court Decision Not in Harmony With the Final Results of Rev. and Amended Final Results of the Antidumping Duty Admin. Rev., 81 Fed. Reg. 36,261, 36,262 (Dep't Com. June 6, 2016) (establishing that that the China-wide rate is 82.05 percent).

database and applied an AFA rate of 82.05 percent. <u>Second Final Remand Redetermination</u> at 6; Letter from Thomas Schauer, Senior Int'l Trade Compliance Analyst, AD/CVD Operations, Office I, re: Diamond Sawblades and Parts Thereof from [China]: Final Remand Results Calculation Memo. for [Bosun] at 3, Doc. No. 4143355 (July 13, 2021). Commerce also calculated a per-unit amount AFA rate and applied it to all FIFO Sales not listed in the U.S. sales database. <u>Second Final Remand Redetermination</u> at 6.

Bosun argues Commerce should apply an adverse inference that all FIFO Sales are of Chinese origin, but that it should not disregard the U.S. sales price data previously submitted in connection with sales identified as Chinese sales. Bosun's Second Remand Comments at 12–13. Relying on this court's decision in <u>Dillinger France S.A. v. United States</u>, 350 F. Supp.3d 1348 (Ct. Int'l Trade 2018), Bosun argues that "Commerce cannot use adverse inferences to substitute information that is on the record." <u>Id</u>. at 14.

Bosun's argument assumes that all the FIFO Sales that it claimed were Chinese and placed in the U.S. sales database are Chinese sales. However, Commerce determined that the FIFO methodology did not yield reliable country-of-origin information. <u>Second Final Remand Redetermination</u> at 5. In light of the identified reliability issues, Commerce reasonably concluded it could not be certain that the FIFO Sales included in the U.S. sales database were Chinese, nor could it be certain that all of the FIFO Sales excluded from the U.S. sales database were Thai.

Court No. 17-00167 Page 15

See id. at 21. In response to Bosun's argument that Commerce should determine that all FIFO Sales were Chinese, see Bosun's Second Remand Comments at 13, Commerce explained that Bosun's proposed application of adverse inferences would not lead to an accurate margin calculation because there was a possibility that the margin calculation could involve sales of Thai sawblades. Second Final Remand Redetermination at 21–22. Commerce explains that although Bosun correctly states that the information missing from the record is the country-of-origin for the FIFO Sales, that information is critical to the determination of whether a sale is properly included or excluded in the U.S. sales database. Second Final Remand Redetermination at 21. Thus, Commerce reasonably concludes that the inability to reliably identify the country of origin for the FIFO Sales means that the corresponding price data in the U.S. sales database is also unreliable because Commerce cannot accurately pair price data with the correct country of origin. Second Final Remand Redetermination at 21–22. Consequently, the U.S. sales database information is missing. Id. Since the information is missing from the record, Commerce filled the gap with facts otherwise available. Id. at 17–18. Because Commerce determined that Bosun failed to cooperate to the best of its ability, Commerce reasonably used adverse inferences when filling the gap. Id.

  **C. Intracompany Sales**

  In the Second Final Remand Redetermination Commerce calculated an AFA per unit rate and applied it to all the FIFO Sales, some of which Bosun claims are

Court No. 17-00167                                                                                                                  Page 16

intracompany sales. Second Final Remand Redetermination at 13–15. Bosun argues that Commerce's decision not to remove intracompany sales data from the FIFO Sales renders its determination contrary to law and unsupported by substantial evidence. See Bosun's Second Remand Comments at 5–8. As a threshold matter, the Court of Appeals did not instruct Commerce to revisit its FIFO analysis. See Diamond Sawblades, 986 F.3d at 1367. Although Bosun argues that Commerce has acted contrary to law by ignoring evidence of intracompany sales, it is reasonably discernable that Commerce did not ignore the evidence, but rather found that it was not within the scope of the Court of Appeals' instructions[11] and further would not be relevant as it was unverifiable. Second Final Remand Redetermination at 13–15. Consequently, Bosun's substantial evidence argument also fails because Commerce has addressed that which detracts from its determination.[12] Universal Camera Corp.

---

[11] Commerce explains that the Court of Appeals upheld its decision to use AFA for the FIFO Sales and instructed Commerce to reconsider its application of AFA to the sales where country-of-origin information was determined using product code or unit price. Second Final Remand Redetermination at 13–14.

[12] Bosun responded to Commerce's second supplemental questionnaire stating it could not identify all the sequence numbers requested because a portion of those sales were sales between importer-affiliates. Second Supplemental Questionnaire Resp. at 1–2. Bosun argues that Commerce should issue an additional supplemental questionnaire requesting that Bosun identify the number of pieces in the intracompany sales transactions so they can be removed from Commerce's margin calculations. Comments on Draft Results of Second Redetermination Pursuant to Court Remand at 9, Doc. No. 4126821 (June 1, 2021). Bosun's argument that Commerce could or should issue a supplemental questionnaire does nothing to undermine the reasonableness of Commerce's determination based on the record evidence and in light of the Court of Appeals' decision.

Court No. 17-00167                                                                                      Page 17

v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

## II.    Surrogate Country Selection

Finally, the court reviews Commerce's decision to use Thai average unit value ("AUV") in the Second Final Remand Redetermination for compliance with the court's remand order. Second Final Remand Redetermination at 8–11; Slip Op. 18-146 at 24–25. In the Final Remand Results, Commerce used Thai average unit value data to value copper powder and copper iron clab.[13]  Final Decision Memo. at 3. Finding Commerce failed to directly address DSMC's argument that the Thai AUV data was an outlier and relied solely on a regulatory preference of valuing all inputs from the same country, this court remanded for further explanation regarding Commerce's decision to use the Thai AUV data. Slip Op. 18-146 at 24–25; Second Final Remand Redetermination at 9–11. Commerce's decision to use AFA for all Bosun's sales mooted the surrogate country selection issue. First Remand Redetermination at 13; see also Second Final Remand Redetermination at 9–10. In the Second Final Remand Redetermination Commerce determined that it would no longer apply adverse inferences to all Bosun's sales; therefore, in the Second Final Remand

---

[13] Copper powder and copper iron clab are factors of production for sawblades. See Diamond Sawblades and Parts Thereof from [China]: Decision Memo. for Prelim. Results of Antidumping Duty Admin. Rev.; 2014-2015 at 2, Doc. No. 3527262-01 (Dec. 5, 2016).

Court No. 17-00167 Page 18

Redetermination, Commerce needed to address DSMC's aberrancy argument[14] to comply with the court's remand order. Slip Op. 18-146 at 24–25.

Commerce explained that DSMC made mathematical errors when calculating the Thai AUV data. Second Final Remand Redetermination at 10–11; see Pre-Prelim. Letter at 3. Commerce noted that when correctly calculated, the Thai AUV data was not aberrational. Second Final Remand Redetermination at 10–11. Given Commerce's preference to value all surrogate values in a single country and evidence that the Thai AUV data is not aberrational, Commerce's decision to use the Thai AUV for copper powder and copper iron clab is reasonable. Id. at 11. No party challenges the use of Thai AUV data before the court. Commerce complied with the court's order to address DSMC's aberrancy argument of the Thai AUV and its determination is supported by substantial evidence on the record.

---

[14] In both its pre-preliminary determination comments and its case brief, DSMC argued that Commerce should use South African, not Thai, import data to value copper powder and copper iron clab because the Thai data was aberrational. Letter from Wiley Rein LLP to Sec'y Com., re: Diamond Sawblades and parts thereof from [China]: DSMC's Pre-Prelim. Deter. Comments Regarding Surrogate Values at 2–4, Doc. No. 3522843 (Nov. 15, 2016) ("Pre-Prelim. Letter"); Case Br. Diamond Sawblades from [China] at 13–16, PD 373, CD 344 (Jan. 17, 2017). In its comments to the draft remand results DSMC reiterated that the Thai AUV data was an outlier and the South African AUV data should be used in its place. See Letter from Wiley Rein, re: Diamond Sawblades and Parts Thereof from [China]: Comments on Draft Results of Redetermination at 6-10, Doc. No. 4126645-01 (June 1, 2021) ("DSMC's Draft Comments").

## CONCLUSION

For the reasons stated, Commerce's Final Remand Redetermination is sustained. Judgment shall enter accordingly.

                                                /s/ Claire R. Kelly
                                                Claire R. Kelly, Judge

Dated:      October 27, 2021
              New York, New York